Case number 16-2106 Marlan McRae v. USA. Argument not to exceed 15 minutes per side. Mr. Herskovich, you may proceed for the appellate. Good morning, Your Honors. David Herskovich on behalf of Petitioner Appellant Marlan McRae. We request five minutes of rebuttal time. This is a case dealing with conflict of interest. Specifically, not multiple representation, but an actual conflict of interest. Courts, including this Court, have generally held that there is a presumption that a lawyer will subordinate his own personal interest for that of the due process interest of the defendant. This case throws that presumption completely out of the window. In this instance, a witness only testifying against the defendant, not his co-defendants, pleads the Fifth on redirect examination. At that point, court takes a break. Petitioner goes outside with his attorney and asks that he file a motion for mistrial. The attorney in this case says, I am not filing a motion for mistrial unless you pay me $50,000 to do so. A clear act of extortion. Now, it's important to note that he did not condition this request on anything. Just, we're going to file a motion, you're going to pay me. Not, if we win, you'll pay me $50,000. That leads to an inference, especially knowing the counsel in this case, that he had a good feeling that that motion was going to be granted, that there was merit to the argument, and why else ask for the $50,000? It may have been that he didn't want to have to try the case again without being paid additional money. But my real question is, was there anybody else there when that statement was allegedly made? Yes. Was there a witness to it? Yes. Marlon McRae's wife was there also. We've submitted affidavits from both Mr. McRae and his wife indicating that this occurred. Now, there is also statements, excuse me, there are also statements from an evidentiary hearing conducted at the Michigan Attorney Discipline Board. And the court should take note of the fact that the Michigan State Bar has suspended Mr. Barnett's license for three years and ordered that he pay restitution of $47,000 to the defendant. Now, within that hearing, Mr. Barnett obviously says he didn't say any of that. The next question is, restitution for what? For the fee that his client had paid him, or for the alleged extortion, or what was that $47,000? There was no explanation from the disciplinary board. One can assume that the board felt that the representation was deficient the minute he committed the act of extortion and therefore paid back for all of the, I mean, no money was paid for a motion for mistrial. So you have to assume that the money being requested to be paid back was for the fee that had originally been paid. And all of it went to Mr. McRae? It was restitution to McRae? Only to Mr. McRae. I mean, the disciplinary hearing had to do with actions not only in this case. But several other cases. Including threatening a prosecutor in Wayne County, as well as taking money and not doing work for a case out of office. So there were other cases involved? Right, but the restitution was only to Mr. McRae. Only to Mr. McRae. Okay, that was my question. Thank you. And is this court as well aware that, you know, typically Strickland v. Washington is the case that would apply, but there is a carve-out, that being Kyler v. Sullivan. In Kyler, we just have to show that an actual conflict of interest occurred and adversely affected the lawyer's performance. I mean, it's pretty evident from the facts of this case that there is an actual conflict of interest. Mr. Barnett's want for $50,000 on one side, and the defendant's due process rights to a fair trial and representation of counsel on the other. Mr. Barnett was asked to do something, and he didn't do it. That's where this case differs from other cases that are cited by sister counsel, as well as by the district court, specifically Faison. In which Faison, there was an accusation of conflict of interest, but in that case the lawyer kept doing everything that the client wanted, even though he kept asking for money, wasn't getting it, he still did it. Here, Marlon McRae wanted a motion for mistrial. There was definite grounds for it. Judge Maloney has indicated that there was a colorable argument for the motion for mistrial. And Marvin Barnett refused to file the motion, again, unless he got $50,000 to do so. That is where this case differs. It differs from Beetz, the Fifth Circuit case, which is cited by sister counsel and by the district. You don't think that there's a rule for economic conflict? In all the cases that I've read, there is not. I mean, there isn't anything specific. Again, we go back to the notion that the courts have always worked on the premise that an attorney is going to subordinate his own interest to that of the client's. That's not what's happening here. In essence, Marvin Barnett committed a felony. He tried to extort money from his client in order to do something, which he has an obligation to do. We as attorneys have an oath to zealously advocate for our clients. That's not what's happening here. Here, he's zealously advocating for himself. But we also know what the consequence was, that he didn't file the motion. In the sense that if he didn't file the motion, then he was asking for it to be stricken, the testimony to be stricken. But from a defense side, always go for the extreme. His first option should have been to file the motion for the mistrial. If the motion is denied, then ask for the testimony to be stricken. But the motion for the ‑‑ I mean, his client specifically asked for him to do something. And you can't ‑‑ it's very hard to say that this is a reasonable trial strategy when you add in the fact that he is demanding money to do it, as opposed to doing it and running the risk to either get granted or get denied. I understand, but the fact that he's greedy and wants to get money wherever he can, notwithstanding his obligations as an attorney, it doesn't follow from there that the best course was to have a retrial if one of the options was just excluding this testimony altogether. But it comes back to the notion of defense counsel. I can't hear you. The notion of what? Of defense counsel going completely against the well‑wishes of the defendant. I mean, therein lies the prejudice. When Mr. Barnett specifically makes that extortion request, there's no more attorney‑client privilege. Mr. McRae testifies during the evidentiary hearing for the Attorney Bar Discipline Board that all there was was hostility between the two and Mr. Barnett going through the motions just to get through the rest of the trial. I'm losing the end of your sentences. I'm sorry. Can you just keep your voice up? That all there was was ‑‑ I'm sorry. I'm a little under the weather. I apologize, Your Honor. All there was was hostility. All there was was hostility between Mr. Barnett and Mr. McRae and Mr. Barnett going through the motions, unlike how he normally would be presenting cases. I mean, Mr. Barnett is known for a specific type of presentation. And the minute that he didn't get that $50,000 and there's hostility between the two, the typical Marvin Barnett type of case is gone. And it's just going through the motions, doing whatever he ‑‑ the least amount possible to get through the rest of the trial. You're characterizing this lawyer because you know him. I mean, is this in the record? If you were to read ‑‑ yeah, I mean, the record shows. You can see a distinct difference. Are you telling us it's an inference you can draw from the record about his general propensities? How do I put this nicely? Mr. Barnett takes a three‑day trial and turns it into a seven‑day trial. He likes to hear himself talk. I'm sure he probably does. I'm just quibbling with you about the editorial comments that likely are not a part of the record. It's pretty evident from the record in the style that he ‑‑ you can see a marked ‑‑ Did it change? Yes, it did change. You can see a marked difference from the beginning of the trial to after this occurs. Okay, that's tether it to this case. Yes. I mean, there is ‑‑ and I apologize if I wasn't doing that previously. There is a definite marked difference. I only have so much time left. We just want to explain to the court, we would ask that the court rule in this case pursuant to Kyler as opposed to having to do the more stringent Strickland standard. But even if we had to abide by the Strickland standard, we feel that there is enough ‑‑ the prejudice here is in the fact that the defendant was denied the effective assistance of counsel.  We always say that in a Strickland case. I mean, that's the first step. The prejudice, but the prejudice is that he doesn't have an attorney acting on his behalf. And we also have to take into account that the court didn't rule on striking the testimony for five days. So the jury is sitting processing this information for five days in their head until the court finally strikes it. And as much as we would assume that jurors always listen to the instructions, we also assume that attorneys are also going to put their interest of ‑‑ they're going to subordinate their interest to that of the client. That didn't happen here. So with that, I will reserve my five minutes for rebuttal. Thank you. Good morning. Sally Behrens on behalf of the United States. May it please the court. The issue in habeas corpus jurisprudence is simply was there a fair trial. And there is no reason in this case to extend Kyla v. Sullivan's standard to the facts of this case, to a pecuniary conflict between a lawyer and his client. Neither this court nor the Supreme Court has done that. The Supreme Court has cautioned against the expansion of the standard in Mickens v. Taylor. And in this case, instead of doing something to ensure a fair trial, it would, in fact, actually result in an injustice because there was no prejudice to Mr. McRae regarding the alleged non‑motion for a mistrial in this case. If anything, Mr. McRae received the best representation he could have gotten and the best outcome he could have gotten in this case. And if the case had been retried, there is a substantial possibility that Mr. Hodges could have been called again. And that he would have testified in that case. And the issue that had happened where he pled the Fifth Amendment would have been cured. Absolutely. Apparently we're both having that trouble today. But my point is simply that Mr. McRae got the best possible outcome here because Mr. Hodges' testimony was struck. So if you apply the Kyla v. Sullivan standard, it becomes a ‑‑ There's no reason to apply it. He might have gotten a mistrial. I don't think that that's possible in this case. If you read through the testimony of Mr. Hodges, it's important to keep in mind that what happened here is Mr. Hodges testified on direct. He was thoroughly cross‑examined by Mr. Barnett. And then on redirect, that's when he pled the Fifth. Very shortly into his redirect testimony, after being asked about his plea agreement, government counsel asked him about what he had done in a previous case where he had cooperated with the government. And that was the point where he didn't want to talk about what he had done in that previous case and he pled the Fifth. It's hard to see, frankly, the prejudice to the defendant at all in his pleading the Fifth in that situation. The government argued that only the redirect testimony should have been struck. And Judge Maloney initially, when it first happened, suggested that as the cure for the situation. It was only after a few days went by and the matter delved into or wandered into different areas with Mr. Barnett's threatening of the witness that the judge decided to strike the entire testimony. As this court knows, a motion for a mistrial order is a last resort in these types of situations. And the preferred method is to strike the testimony or a portion of the testimony  Moreover, it is important, I think, for this court to recognize that if it were to find that a pecuniary conflict between counsel and his client were to result in the Kyla v. Sullivan standard, that has the potential to be applicable in every case with a retained lawyer and, in fact, frankly, some with pro bono counsel. You can even imagine that in this case, had Mr. Barnett done the opposite. Let's say Mr. Barnett had moved for a mistrial and inexplicably had won that motion. The argument on appeal now, the argument for ineffective assistance now, would be that Mr. Barnett had done that instead of simply moving to strike the witness's testimony in order to get paid for an additional trial. We would have had the exact opposite and same argument on appeal, just the inverse. Moreover, the primary rationale for applying Sullivan v. Kyler in multiple representation cases, as your question, Judge White, touched on, is that in those cases, it is difficult to tell what the effect of the multiple representation was on the defense. The lawyers essentially stopped from talking instead of actually making a point or making an argument that they should have made, and that's missing here. Here we know exactly what the alleged prejudice was to Mr. McRae. So there's no reason to apply Kyler v. Sullivan because Strickland gets us to the right question of how to determine whether a trial was fair. Moreover, in this case, as we've discussed, there simply wasn't any prejudice to the not moving for a mistrial. It was unlikely to be granted, and the evidence in this case against Mr. McRae was overwhelming. Two different people testified that he had been involved in a conspiracy to distribute cocaine with them since the 90s into the 2000s. This case was tried in 2011. Moreover, there was a search warrant executed at Mr. McRae's house in which the officer testified. Drugs and guns were found. There was a bag that had two bricks of cocaine in it, which had Mr. McRae's fingerprints on the outside. There simply is no prejudice in this case. Unless the court has additional questions, the government will submit the matter. Is there something fundamentally flawed with the trial where the lawyer is extorting money from the client just to represent him properly? Every lawyer expects a fee for representation where they're retained in a case. And I don't think that this trial was fundamentally unfair where the lawyer's conduct was not affected in a way that prejudiced his client. I don't think you can say that a trial is fundamentally unfair where a lawyer got the best outcome, took the best course that he could for his client. I also have to disagree with counsel's statement that Mr. Barnett's conduct changed throughout the trial. He continued to argue aggressively on behalf of his client, even after the moment where Mr. Hodges The allegation is that Mr. Hodges pled the fifth, and then in the hallway after that, Mr. Barnett had this conversation with his client. And, of course, we haven't had a hearing on this. We have not heard. No one's been subject to cross-examination on that issue. So it's just the allegation at this point. But after that point in time, a great deal more happens that is on the record, where Mr. Barnett is arguing with the court and with the AUSA, and he is just as aggressive in that time period as he was before. I simply don't see the inference that my opponent has represented to the court regarding his behavior after this happens. Moreover, my opponent stated a couple times, well, Mr. McRae wanted this motion. This court has often held that a mistrial, the decision of whether to move for a mistrial, is a tactical decision that rests with the lawyer. And in this case, as I've stated, there were many, many reasons why a mistrial motion was not necessarily the best course. In fact, I believe it was not the best argument that Mr. Barnett can make on behalf of his client. Unless the court has further questions, the government will submit the matter. Thank you. Were this court to find that there was no ineffective assistance of counsel, it would essentially be giving permission for attorneys like Mr. Barnett and others to take actions only for themselves and to subvert the needs and wants of their clients. In a similar vein, if this court were to find that there is ineffective assistance of counsel, it's not going to open up a floodgate of similar type of tactics. It's counterproductive to even make that assumption, because why would an attorney for a nominal amount of money give up a potential career, as what's happened here with Mr. Barnett with his suspension and his likelihood that he's not going to be practicing law anymore, why would they give up an opportunity to make tens to hundreds of thousands of dollars in order just to get one outcome in one case? So to argue that this would open up a floodgate and allow all these other types of... Well, are you saying that you would need to support it with a finding of misconduct or something? I'm sorry? Are you saying that there would be some sort of a threshold that there would be a finding of misconduct to be able to bring this kind of claim under a Sullivan standard? Sullivan says that we have to have an actual conflict of interest and that there's an adverse effect on the representation. I mean, typically there would be a finding of... I mean, in this instance, we had a hearing. There was a grievance, and he was found to have committed acts that were grievable. I'm not saying that we should necessarily... I think counsel is saying that, you know, yeah, in this case there is a lot of support for it, but there won't necessarily be in other cases. Right. I didn't want to pigeonhole myself and hamper everybody else down the line. I mean, this specific case obviously is different than any other type of pecuniary interest. Again, we go back to the, you know, typically it's multiple representation or literary rights or asking for money and not getting paid it but still doing the work. Here he asked for money, didn't get paid it, and didn't do what he was asked to do, which completely differs from how this court ruled in FASA. Unless this honorable court has any other questions, I will... I just want to be sure. Do you have any cases where the Sullivan Standard is applied in a financial conflict situation? I mean, do you have... No, there isn't. To the best of my knowledge, to the best of all my research that we've done over the past six years on this case... I just wanted to make sure I wasn't missing anything. Unless I'm missing something either, then no, Your Honor. Thank you. Thank you all very much. We thank you both for your arguments. Consider the case carefully. Those being the only two argued cases, I believe you may adjourn court.